**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

ANTHONY CAGNINA,                              :
                                              :
                    Plaintiff,                :          Civ. No. 16-7253 (RBK)
                                              :
        v.                                    :
                                              :
GARY LANIGANI, et al.,                        :          **OPINION**
                                              :
                    Defendants.               :
_____ :

**ROBERT B. KUGLER, U.S.D.J.**

## I.      INTRODUCTION

Plaintiff, Anthony Cagnina, is a state prisoner currently incarcerated at South Woods

State Prison ("SWSP") in Bridgeton, New Jersey. He is proceeding *pro se* with a civil rights

complaint filed pursuant to 42 U.S.C. § 1983. At this time, this Court must screen the complaint

pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as

frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it

seeks monetary relief from a defendant who is immune from suit. For the following reasons, the

complaint will be permitted to proceed in part.

## II.      BACKGROUND

The allegations of the complaint will be construed as true for purposes of this screening

opinion. Mr. Cagnina names the following as defendants:  (1) Gary Lanigani – Commissioner of

the New Jersey Department of Corrections ("NJDOC"); (2) University Correctional Health Care

Rutgers ("UCHC"); (3) Dr. Ralph Woodward – Supervisor & Medical Provider to NJDOC and

UCHC: (4) Dr. Arthur Brewer – Supervisor and Medical Provider to NJDOC and UCHC; (5) Dr.

William Briglia – Medical Provider for NJDOC and UCHC; (6) Dr. Diaz – Medical Provider for

NJDOC and UCHC; (7) Dr. Sherita Latimore-Collier – Medical Provider for UCHC and NJDOC; (8) Monica Tsakiris – Nurse Practitioner; (9) Melissa Curtis – Nurse Practitioner; (10) Jen Farestad – Nurse Practitioner; (11) Angie Luciano – Physical Therapist; (12) John & Jane Does.

Mr. Cagnina's complaint arises from the medical treatment, or lack thereof, he has received while incarcerated at SWSP principally for his left shoulder and back pain. Before his commitment to SWSP on February 25, 2015, Mr. Cagnina had pain in his left shoulder and back. He had MRIs performed in 2010 and again in 2012. He was prescribed various pain medications as a result of his pain.

On February 27, 2015, Mr. Cagnina met with Tsakiris and advised her of his MRI findings and pain medications he takes. However, Tsakiris refused to refer Mr. Cagnina to a physician or provide him pain medication.

From March 1, 2015 until May 1, 2015, Mr. Cagnina went to the medical department at SWSP several times complaining of pain. One of these consults was with Tsakiris. His efforts were to no avail.

On May 12, 2015, Mr. Cagnina was admitted to St. Francis Medical Center to have a stent placed in his heart. He was transferred back to SWSP on May 14, 2015. He remained at SWSP's extended care unit until December 20, 2015. He complained every day to medical personnel there about the pain in his left shoulder and back that made it hard for him to walk.

Eventually, Curtis requested that Mr. Cagnina receive an evaluation from physical therapist Luciano. Mr. Cagnina consulted with Luciano in June, 2015. Luciano ordered physical therapy. Mr. Cagnina performed physical therapy with Luciano for six weeks. After each

session, Mr. Cagnina advised Luciano of the worsening of his pain caused by the physical therapy exercises. Nevertheless, Luciano continued Mr. Cagnina's physical therapy sessions.

On December 20, 2015, Mr. Cagnina was cleared to leave the extended care unit by Dr. Briglia to return to general population. Mr. Cagnina explained to Curtis that there was a very long walk back to general population and that there was no way he could do it without assistance. Nevertheless, Mr. Cagnina left the extended care unit that day. About halfway back to general population, Mr. Cagnina collapsed due to the pain his spine and legs. Mr. Cagnina was then provided a wheelchair which he has had since December 20, 2015. He is unable to walk or stand for more than seven minutes.

On December 21, 2015, Mr. Cagnina was called to medical and had a consult with Tsakiris. He explained to her the previous MRI findings and the pain he was suffering in his left shoulder, spine, back and legs, along with the problems he was having standing and walking. Tsakiris requested an X-ray on Mr. Cagnina's back that was eventually conducted.

In February, 2016, Mr. Cagnina had another medical consult with Tsakiris where he again complained about the pains in his left shoulder, spine, back and legs as well as his problems standing and walking. Tsakiris told him that his X-rays came back normal. Mr. Cagnina requested an MRI, but Tsakiris prescribed him a muscle relaxer, instead.

On March 25, 2016, Mr. Cagnina had another consult with Tsakiris complaining of his pain in his left shoulder, spine, back and legs as well as his problems standing and walking. Tsakiris requested that Mr. Cagnina be given an internal specialty consult with Luciano.

Mr. Cagnina met with Luciano who ordered him to perform six weeks of physical therapy. After three weeks, Mr. Cagnina told Luciano that he would have more pain in his spine,

back and legs from the physical therapy than before he had started it. Eventually, Luciano became frustrated with Mr. Cagnina and ordered him to do his physical therapy alone in his cell.

On May 4, 2016, Mr. Cagnina wrote a letter to Dr. Woodward that explained his pains, injuries and occurrences at SWSP. Mr. Cagnina states that he did not receive a response to his letter.

Also in May, 2016, Mr. Cagnina had another consult with Tsakiris where he complained about the physical therapy with Luciano as well as the pain he was suffering to no avail. Four days later, Tsakiris advised Mr. Cagnina that Luciano stated that an MRI was not needed for him.

On June 12, 2016, Mr. Cagnina wrote to Dr. Woodward again and sent him his MRI findings which he had just received in May, 2016.

At the end of June, 2016, Mr. Cagnina met with Farested on a medical consult. He told her the problems he was having and Farestead put in a request to see a neurologist which was done. One week later Mr. Cagnina was told by Tsakiris that he was denied a consult with a neurologist. Mr. Cagnina again complained about his injuries to Tsakiris who requested to her supervisors that Mr. Cagnina receive some sort of injections for his pain. That request was ultimately denied. Despite Mr. Cagnina's complaints to her, Tsakiris responded that she can only request treatment so her hands were tied.

Mr. Cagnina requests injunctive and monetary relief. He also requests the appointment of pro bono counsel. Furthermore, he has also filed a motion for a temporary restraining order/preliminary injunction and requests the appointment of an independent medical expert.

4

### III.    LEGAL STANDARDS

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *see* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)); *Courteau v. United States*, 287 Fed.Appx. 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S.

519 (1972). Nevertheless, *"pro se* litigants still must allege sufficient facts in their complaints to

support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation

omitted).

## IV.    DISCUSSION

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of

constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a
> judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was
> unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of

a right secured by the Constitution or laws of the United States, and second, that the alleged

deprivation was committed or caused by a person acting under color of state law. *See Harvey v.

Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v.

Atkins*, 487 U.S. 42, 48 (1988).

> For the delay or denial of medical care to rise to a violation of the
> Eighth Amendment's prohibition against cruel and unusual
> punishment, a prisoner must demonstrate "(1) that defendants were
> deliberately indifferent to [his] medical needs and (2) that those
> needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.

> 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious mat a lay person would easily recognize the necessity for a doctor's attention.' " *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

A. <u>Tsakiris</u>

This Court will permit Mr. Cagnina's deliberate indifference claims against Tsakiris to proceed in part. For much of Mr. Cagnina's incarceration at SWSP, he received some treatment from Tsakiris. Indeed, she requested that X-rays be taken of his back, prescribed him muscle relaxers, and requested that he be given an internal specialty consult with Luciano. However, this Court is troubled by Tsakisis' treatment of Mr. Cagnina upon his arrival at SWSP.  Indeed, Mr.

Cagnina alleges that he advised Tsakiris of his medical conditions and medications, yet she refused to refer him to a physician or provide him pain medication. It is plausible that these allegations rise to the level of deliberate indifference such as intentionally preventing Mr. Cagnina from getting medical care or delaying medical treatment for a non-medical reason. At this early stage, this Court will permit Mr. Cagnina to proceed with a deliberate indifference claim against Tsakiris.

### B. Luciano

This Court will also permit a deliberate indifference claim to proceed against Luciano. Despite complaining that the physical therapy was hurting Mr. Cagnina more, Luciano continued with the treatment. At this early stage, this could be seen as persisting in a course of treatment in the face of resultant pain. *See McCluskey*, 505 F. App'x at 202.

### C. Curtis

A deliberate indifference claim against Curtis shall also be permitted to proceed. Mr. Cagnina complained to her that he could not walk back to general population because of his pain and injuries when he was to be released from the extended care unit. Nevertheless, Curtis did not provide him with a wheelchair. Mr. Cagnina ultimately collapsed on the walk back. Such allegations could rise to the level of deliberate indifference because Curtis allegedly knew of Mr. Cagnina's need for medical treatment in the form of a wheelchair, but intentionally refused to provide it.

### D. Woodward & UCHC

Mr. Cagnina alleges Woodward's involvement in this case in the form of grievance letters he wrote to Woodward as one of the supervisory doctors. Similarly, Mr. Cagnina states that UCHC is aware through his grievances that his constitutional rights have been violated. It is

worth noting that numerous courts have explained that a plaintiff states a claim by alleging that a supervisory defendant reviewed a grievance where the plaintiff alleges an ongoing violation as she "'is personally involved in that violation because [s]he is confronted with a situation [s]he can remedy directly.'" *Carter v. Smith,* No. 08–279, 2009 WL 3088428, at *6 (E.D. Pa. Sept. 23, 2009) (quoting *Harnett v. Barr,* 538 F. Supp. 2d 511, 524–25 (N.D.N.Y. 2008)); *see also Zappulla v. Fischer,* No. 11–6733, 2013 WL 1387033, at *10 (S.D.N.Y. Apr. 5, 2013) ("[T]he Complaint further alleges that Defendant Lee, after being informed of that ongoing violation through the grievance process, failed to remedy that wrong. Those allegations ... are adequate to state a claim against Lee.") (citations omitted); *Whitehead v. Rozum,* No. 11–102, 2012 WL 4378193, at *2 (W.D. Pa. Aug.7, 2012) ("In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (citations omitted), *report and recommendation adopted by,* 2012 WL 4370929 (W.D. Pa. Sept.24, 2012); *Williams v. Johnson,* No. 10–1290, 2011 WL 1396967, at *5 (E.D. Va. Apr. 11, 2011) ("In support of his argument, Williams states that Johnson was made aware of these violations through appeals to denials of grievances that Williams filed. To the extent that the [allegations] relate to ongoing constitutional violations that defendant Johnson was made aware of, Williams has plausibly stated a claim for which Johnson made be liable."); *Binsack v. Lackawanna Cnty. Prison,* No. 10–535, 2010 WL 4973309, at *3 (M.D. Pa. Oct. 14, 2010) ("A prisoner's grievance or complaint regarding ongoing abuse may be sufficient to put a prison official on notice of such abuse by other prison staff and therefore may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims.") (citing *Atkinson v. Taylor,* 316 F.3d 257, 270–71 (3d Cir. 2003)), *report and recommendation adopted*

*by,* 2010 WL 4956329 (M.D. Pa. Dec.1, 2010). Based on this theory, and in light of the early stages of this litigation, this Court will permit Mr. Cagnina's claims against Woodward and UCHC to proceed.

E.   Farestad

Mr. Cagnina's factual allegations against Farestad are insufficient to state a deliberate indifference claim. Indeed, Mr. Cagnina alleges that Farestad made the request to UCHC medical supervisors that Mr. Cagnina should see a neurologist. This Court fails to see how these actions by Farestad as alleged rise to the level of deliberate indifference. Therefore, Mr. Cagnina's federal claims against Farestad will be dismissed without prejudice.

To the extent that Mr. Cagnina is pursuing state law claims against Farestad, this Court will not exercise supplemental jurisdiction over such claims since his federal claims against her have been dismissed. *See T.R. v. Cnty. of Delaware,* No. 13–2931, 2013 WL 6210477, at *8 (E.D. Pa. Nov. 26, 2013) (declining supplemental jurisdiction over plaintiff's state law claims against one defendant when there are no viable federal claims against that defendant despite the fact that plaintiff may have pled plausible claims against another defendant); *see also Nadal v. Christie,* No. 12–5447, 2014 WL 2812164, at *8 (D.N.J. June 23, 2014).

F.   Briglia

Mr. Cagnina's sole specific allegations against Briglia is that he cleared Mr. Cagnina to return back to general population from the extended care unit on December 20, 2015. This allegation, standing alone, fails to state a deliberate indifference claim against Briglia. Furthermore, this Court will decline to exercise supplemental jurisdiction over any state law claims such an allegation could potential be raising as there are no longer any federal claims remaining against Briglia. *See T.R.,* 2013 WL 6210477, at *8 (declining supplemental

jurisdiction over plaintiff's state law claims against one defendant when there are no viable federal claims against that defendant despite the fact that plaintiff may have pled plausible claims against another defendant); *see also Nadal,* 2014 WL 2812164, at *8.

G. Langani, Brewer, Diaz, Latimore-Collier

Personal involvement of the defendants is necessary to sustain a Section 1983 claim. . *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988); *see also In re Bayside Prison Litig.*, No. 97–5127, 2007 WL 327519, at *5 (D.N.J. Jan.30, 2007). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *See Rode*, 845 F.2d at 1207; *see also Baker v. Monroe Twp.,* 50 F.3d 1186, 1190–91 (3d Cir. 1995); *Jackson v. Camden Cnty. Corr. Facility,* No. 12–7538, 2013 WL 1844636, at *3 n.1 (D.N.J. Apr. 29, 2013). However, the complaint is devoid of specific factual allegations against Langani, Brewer, Diaz and Latimore-Collier with respect to their personal involvement in his medical care. Therefore, the federal claims against them will be dismissed without prejudice. As with Brigilia and Farestad, this Court will also decline to exercise supplemental jurisdiction over Mr. Cagnina's state law claims against these defendants as well because all of the federal claims against them have been dismissed. *See T.R.*, 2013 WL 6210477, at *8; *see also Nadal*, 2014 WL 2812164, at *8.

## V.    MOTION TO APPOINT COUNSEL

Mr. Cagnina is pursuing this case *in forma pauperis*.  Indigent persons raising civil rights claims have no absolute right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). As a threshold matter, there must be some merit in fact or law to the claims the plaintiff is attempting to assert. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Furthermore, in determining whether to appoint counsel, a court considers the following:  (1) the plaintiff's

ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155-56, 157 n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011) (reiterating the *Tabron* factors). Additionally, the power to grant appointment of counsel lies solely with the discretion of this Court. *See id.* Appointing counsel may be made at any point during the litigation *sua sponte* or by granting a party's motion. *See id.* at 156.

Initially, the Court notes that there may be some merit to Mr. Cagnina's claims. For example, as described above, several of his claims against various defendants have made it past this Court's screening. He could potentially have a meritorious deliberate indifference claim under the Eighth Amendment. Thus, the *Tabron* factors will be analyzed.

The first *Tabron* factor requires this Court to analyze the circumstances of the individual plaintiff. *See* 6 F.3d at 156. "Courts generally should consider the plaintiff's education, literacy, prior work experience, and prior litigation experience. An indigent plaintiff's ability to present his or her case may also depend on factors such as the plaintiff's ability to understand English. *See id.* (citations omitted). In this case, plaintiff has demonstrated that he is literate and understands English. Furthermore, plaintiff has had access to this Court as demonstrated by his numerous court filings. Accordingly, this factor does not weigh in favor of appointing counsel.

The second *Tabron* factor requires this Court to examine the complexity of the legal issues in the case. *See* 6 F.3d at 156. "[W]here the law is not clear, it will often serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis."

*Id.* In this case, plaintiff is raising Eighth Amendment deliberate indifference claims arising from the medical care he received. The underlying law for asserting an Eighth Amendment deliberate indifference to a serious medical needs claim is clear. *See Montgomery v. Pinchak*, 294 F.3d 492, 502 (3d Cir. 2002) (citation omitted). Nevertheless, "[s]implicity in the allegation does not translate into simplicity in the presentation of the claim." *Id.* Thus, "[w]hile the ultimate issue may be comprehensible, courts must still look to the proof going towards the ultimate issue and the discovery issues involved." *Parham*, 126 F.3d at 459.

Mr. Cagnina is attempting to raise claims associated with the medical care he has received (or lack thereof) at SWSP. Based on the potential for complex medical issues associated with this case, this Court finds that Mr. Cagnina's case presents issues of sufficient complexity so as to warrant the appointment of counsel. *See Colston v. Corr. Med. Servs.*, 256 F. App'x 551, 553 (3d Cir. 2007) ("[C]ivil rights cases alleging deliberate indifference to a prisoner's medical needs can raise sufficiently complex legal issues to require appointment of counsel.") (citing *Montgomery*, 294 F.3d at 502 (citing *Parham*, 126 F.3d at 459)). Thus, the second *Tabron* factor weighs in favor of appointing counsel.

The third *Tabron* factor asks this Court to examine the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation. *See Tabron*, 6 F.3d at 156. "[W]here claims are likely to require extensive discovery and compliance with discovery rules, appointment of counsel may be warranted." *Id.* (citing *Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992)). Documents and medical records from different sources may be needed to be produced and examined in this case. Given the nature of Mr. Cagnina's deliberate indifference arguments, the Court finds that the third *Tabron* factor supports appointment of counsel. *See Parham*, 126 F.3d at 460 (deliberate indifference to

medical needs claims "involve[] complex facts and medical records that even most lawyers struggle to comprehend").

The fourth *Tabron* factor requires the Court to analyze whether the case will turn on credibility determinations and whether the case is "solely a swearing contest." *Parham*, 126 F.3d at 460. In this case, this Court presumes that the medical records could provide the relevant evidence with respect to the claims. Therefore, at this time, the Court finds that the fourth *Tabron* factors does not necessarily weigh in favor of appointing counsel.

This Court also needs to consider whether the case will require expert testimony under the fifth *Tabron* factor. Expert testimony in this case may ultimately be necessary. *See, e.g.*, *Pearson v. Prison Health Service*, C.A. No. 16-1140, 2017 WL 892371, at *5 (3d Cir. March 7, 2017). Thus, this factor weighs in favor of appointing counsel.

Finally, the sixth *Tabron* factors requires this Court to analyze whether plaintiff is able to retain and afford counsel. *See* 6 F.3d at 156. Plaintiff is proceeding *in forma pauperis* in this case and there is no indication that plaintiff is able to retain and afford counsel. Consequently, this factor weighs in favor of appointing counsel.

On balance, and having considered the *Tabron* factors, the Court finds that the appointment of counsel is warranted.

## VI.   MOTION FOR A TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION/APPOINTMENT OF EXPERT

Mr. Cagnina has also filed a motion for a temporary restraining order (TRO)/preliminary injunction. He seeks to have this Court restrict the defendants from denying him proper treatment for his shoulder and back. He also seeks the appointment of an independent medical expert.

To secure the extraordinary relief of a preliminary injunction or a temporary restraining order ("TRO"), a plaintiff must demonstrate that "'(1) he is likely to succeed on the merits; (2)

denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants; and (4) granting the injunction is in the public interest.'" *Barber v. Sharp*, No. 10–5286, 2011 WL 2223651, at *15 (D.N.J. June 2, 2011) (citing *Maldonaldo v. Houston*, 157 F.3d 179, 184 (3d Cir. 1998) (as to preliminary injunction); *Balias v. Tedesco*, 41 F.Supp.2d 531, 537 (D.N.J. 1999) (as to TRO)). A preliminary injunction grants "intermediate relief of the same character as that which may be granted finally." *De Beers v. Consol. Mines v. United States*, 325 U.S. 212, 220 (1945). A plaintiff "must establish that all four factors favor preliminary relief." *Barber*, 2011 WL 2223651, at * 15 (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187 (3d Cir. 1990)).

At this stage of the proceedings, this Court will have the remaining defendants respond to the motion prior to this Court ruling on the merits of the motion. Once the defendants are served with the complaint and the motion, the defendants shall respond to the motion within thirty days.

## VII.   CONCLUSION

For the foregoing reasons, Mr. Cagnina's complaint shall be permitted to proceed against defendants UCHC, Woodward, Tsakiris, Curtis and Luciano on the claims outlined in this Opinion. Mr. Cagnina's federal claims against defendants Langani, Brewer, Brijalia, Diaz, Latimore-Collier and Forestad are dismissed without prejudice for failure to state a claim upon which relief may be granted. This Court declines to exercise supplemental jurisdiction over Mr. Cagnina's state law claims against Langani, Brewer, Brijalia, Diaz, Latimore-Collier and Forestad. The motion for the appointment of pro bono counsel is granted. The remaining defendants shall respond to Mr. Cagnina's motion for a temporary restraining order/preliminary injunction/appointment of an expert within thirty days of being served with the complaint.

DATED:  March 28, 2017                                    s/Robert B. Kugler
                                                         ROBERT B. KUGLER
                                                         United States District Judge